UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

HR US LLC,

   Plaintiff,

  v.

MIZCO INTERNATIONAL, INC.; AND
ALBERT MIZRAHI,

   Defendants.

--------------------------------X

<u>MEMORANDUM AND ORDER</u>

Civil Action No.
CV-07-2394 (DGT)(JO)

Trager, J:

  Plaintiff HR US LLC ("plaintiff") holds U.S. Design Patent
No. D431,250 (the "'250 patent"). Plaintiff alleges that Mizco
International, Inc., and Albert Mizrahi (collectively
"defendants") offer and sell products that infringe the '250
patent. The parties have filed a number of motions, which are
addressed below.

## Background

  The '250 patent, which was designed by Herbert Richter of
Germany, was filed on November 22, 1999 and was granted on
September 26, 2000. The '250 patent claims "[t]he ornamental
design for a palm pilot holder as shown and described" in the
patent. Included in the '250 patent are six figures (the "'250
drawings"), which show different views of a palm pilot holder

(the "claimed holder"). The written descriptions in the '250 patent simply explain what views the various figures embody.

Although plaintiff alleges that defendants sell three infringing products, the parties' papers only discuss the particular mount product produced by defendants that was made part of the record.

At the outset, it is necessary to explain a difference between the '250 patent and the alleged infringing product (the "Mizco holder") that is discussed in a number of the claims at issue.[1] The Mizco holder and the commercial embodiment of the '250 patent ("Commercial Embodiment") both include adjustable side arms that extend out from the base of the holder. This feature allows the side arms to securely "clamp" electronics products of different sizes to the holder. Harald Richter Decl. ¶ 11; Dixon Decl. ¶ 12; Amsel Decl. ¶ 16; Anders Decl. ¶ 28. In Mizco Holder Pictures #2 and #5, the side arms appear to be fully extended (the "open position"). When in the open position, the side arms of both the Mizco holder and the Commercial Embodiment are connected to the base of the holder by side arm extensions. When the side arms of the Mizco holder and the Commercial Embodiment are not extended to any degree (the "closed position"), the side arm extensions slide into the base and are

---

[1]   The '250 drawings and pictures of the Mizco holder ("Mizco Holder Pictures"), Def.'s 56.1 Statement, Ex. 4, are included in the Appendix of this opinion.

2

no longer visible. See Mizco Holder Pictures #1, 3-4, 6. In Figure 1 of the '250 patent, and in all of the other '250 drawings, the side arms of the holder are shown in the closed position. Because none of the '250 drawings show the holder in the open position, the '250 drawings do not show any side arm extensions. The '250 patent does not, on its face, indicate whether the side arms shown in the '250 drawings are adjustable or fixed.

After a proposed joint pre-trial order was submitted, the parties filed a number of motions. Plaintiff filed a partial summary judgment motion on three of defendants' affirmative defenses. Defendants' opposition brief opposed plaintiff's motion and also sought summary judgment on the same grounds. Defendants also filed a motion for summary judgment on the issues of validity and infringement. In addition, defendants have filed a motion to strike a deposition errata sheet submitted by plaintiff and to declare the '250 patent unenforceable based on inequitable conduct. Finally, defendants filed a motion in limine to prevent two of plaintiff's witnesses, Harald Richter and Steven Dixon, from testifying as experts.

## (1)

## Validity

The first defense raised in the Joint Pre-Trial Order states:

> The '250 Design patent is invalid under 35 U.S.C.
> § 112 since the patent drawings are inconsistent
> and incomplete and do not sufficiently disclose the
> invention.  There is no showing in the patent of
> the design in the open position.  It is also
> invalid based on prior art patents under 35 U.S.C.
> ¶¶ 102 and 103.

Both parties have moved for summary judgment on the question of whether the '250 patent is invalid for failing to show the claimed holder in the open position.  Defendants also move for summary judgment on the ground that certain inconsistencies in the '250 drawings render the '250 patent invalid for indefiniteness and nonenablement under 35 U.S.C. § 112.

35 U.S.C. § 112, which applies to both utility and design patents, 35 U.S.C. § 171, states:

> The specification shall contain a written
> description of the invention, and of the manner and
> process of making and using it, in such full,
> clear, concise, and exact terms as to enable any
> person skilled in the art to which it pertains, or
> with which it is most nearly connected, to make and
> use the same, and shall set forth the best mode
> contemplated by the inventor of carrying out his
> invention.
>
> The specification shall conclude with one or more
> claims particularly pointing out and distinctly

4

claiming the subject matter which the applicant
regards as his invention. . . .

In addressing claims that design patents are indefinite based on inconsistent drawings, courts have not clearly distinguished between questions of law and questions of fact. See Antonious v. Spalding & Evenflo Cos., Inc., 217 F.3d 849, 1999 WL 777450, at **7 (Fed. Cir. 1999) (unpublished table case) (reversing summary judgment invalidating patents because defendant "could not have shown by clear and convincing evidence that [the patents] were invalid for indefiniteness" and stating both that a patent "must be proven invalid by clear and convincing evidence" and that "[w]hether a claim is indefinite and therefore invalid for violating section 112, ¶ 1, is a question of law"). Similarly, district courts analyzing indefiniteness challenges to design patents have not squarely addressed this issue. See Park B. Smith, Inc. v. CHF Indus., Inc., No. 06-cv-869, 2008 WL 650339, at *6 (S.D.N.Y. Mar. 6, 2008) (stating that presumption of validity "may only be overcome by clear and convincing evidence" and denying, in dicta, validity challenge on summary judgment, but not addressing whether question was one of fact or law), vacated on other grounds, No. 08-1320, 2009 WL 279051 (Fed. Cir. Feb. 6, 2009); Seed Lighting Design Co., Ltd. v. Home Depot, No. 04-cv-2291, 2005 WL 1868152, at *8 (N.D. Cal. Aug. 3, 2005) (stating that invalidity must be proven by clear and convincing evidence and granting summary

5

judgment invalidating patent where defendant offered expert
testimony and admissions by inventor regarding inconsistencies
and plaintiff failed to come forward with "any evidence, facts,
or expert testimony . . . to demonstrate the existence of genuine
factual issues sufficient to preclude summary judgment"), appeal
dismissed, 163 Fed. App'x. 862 (Fed. Cir. 2005); see also
Australia Vision Servs. Pty. Ltd. v. Dioptics Med. Prods, Inc.,
29 F. Supp. 2d 1152, 1159 (C.D. Cal. 1998) (denying defendant's
summary judgment motion for invalidity based on similar claim of
indefiniteness because defendant "did not include any evidence or
declarations by experts in the field to attest to the
indefiniteness of the [the design patent]," and concluding that
"there is a factual dispute whether the drawings can enable a
person skilled in the art to replicate the patented design").

    The parties here are also unclear on this issue.
Defendants, citing to decisions that do not involve
indefiniteness challenges, state that: (1) a defendant must
establish facts, by clear and convincing evidence, that lead to
the conclusion of invalidity; and (2) that validity is a question
of law.  Defs.' Mem. of Law in Supp. of Summ. J. Mot. for
Invalidity and Non-Infringement ("Defs.' Summ. J. Mot.") at 5-6
(citations omitted).  Plaintiff agrees with defendants' statement
of the law, but, nonetheless, argues that factual issues exist
precluding a grant of summary judgment in favor of defendants on

the issue of inconsistent drawings. Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 3-6. Neither party offers any explanation as to what issues are questions of law and what issues are questions of fact.

In the utility patent context, the Federal Circuit has stated that "'[a] determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.'" Techn. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1338 (Fed. Cir. 2008) (quoting Personalized Media Commc'ns, L.L.C. v. Int'l Trade Comm'n, 161 F.3d 696, 705 (Fed. Cir. 1998)). The Federal Circuit, however, has also noted that fact finding may sometimes be appropriate in determining indefiniteness. Id. at 1338 ("To the extent there are any factual findings upon which a trial court's indefiniteness conclusion depends, they must be proven by the challenger by clear and convincing evidence" (citing Intel Corp. v. VIA Techs., Inc., 319 F.3d 1357, 1366 (Fed. Cir. 2003))).

In the instant case, defendants' invalidity arguments primarily involve questions of law. Defendants' challenge based on the inconsistent drawings is strictly a question of law because a simple visual inspection of the '250 drawings both reveals the inconsistencies in the drawings and resolves the question of whether the inconsistencies render the patent

7

indefinite. Cf. Intel, 319 F.3d at 1367 (stating, in a utility patent case, that "[w]hen an analysis of intrinsic evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained"); Enzo Life Scis., Inc. v. Digene Corp., 305 F. Supp. 2d 406, 408 (D. Del. 2004) (explaining, in a utility patent case, that issue of indefiniteness could be decided as a matter of law where "[t]he claims at issue do not have technical or relational terms that may be understood differently by one of ordinary skill in the art" and defendant's "arguments of indefiniteness involve allegations of internal contradiction based upon the wording of the claims"). Defendants' second argument that the '250 patent is invalid because it fails to show the claimed holder in the open position can also be decided as a matter of law. This argument primarily involves interpreting the relevant statute and regulations.[2] Defendants' argument regarding the lack of an open position view in the '250 patent will be addressed first.

**a. Failure Of The '250 Patent To Show The Claimed Holder In The Open Position**

In addition to the general standards set out in 35 U.S.C. § 112, two regulations set out the various requirements that

---

[2] There is one potential factual issue, to wit, whether adjustable side arms are a technological necessity in palm pilot holders. However, even as to this issue, there are no disputed facts, and therefore the issue can be decided as a matter of law.

design patent drawings must meet. 37 C.F.R. § 1.84 (addressing design and utility patents); 37 C.F.R. § 1.152 (specifically addressing design patents). Those regulations "have the force and effect of law to the extent they are not inconsistent with the express provisions of the Patent Statute." Hadco Prods., Inc. v. Lighting Corp. of Am., 312 F. Supp. 1173, 1181 (E.D. Pa. 1970), vacated on other grounds, Hadco v. Walter Kidde & Co., 462 F.2d 1265 (3d Cir. 1972). 37 C.F.R. § 1.152 provides, in relevant part, that:

> The design must be represented by a drawing that complies with the requirements of [37 C.F.R. § 1.84] and must contain a sufficient number of views to constitute a complete disclosure of the appearance of the design. . . . Alternate positions of a design component, illustrated by full and broken lines in the same view are not permitted in a design drawing.

37 C.F.R. § 1.84(h), echoes a similar requirement, stating that "[t]he drawing must contain as many views as necessary to show the invention." In a section entitled "Alternate position," 37 C.F.R. § 1.84(h)(4) states that "[a] moved position may be shown by a broken line superimposed upon a suitable view if this can be done without crowding; otherwise, a separate view must be used for this purpose."

The parties do not dispute that the '250 patent includes a sufficient number of views of the claimed holder in the closed position. The dispute centers over the '250 patent's failure to include any views of the claimed holder in the open position.

9

Defendants argue that where a design has an alternate position, a patent for that design is _per se_ invalid if the patent drawings fail to disclose the alternate position. However, neither 35 U.S.C. § 112 nor the relevant regulations require that alternate positions be shown. Although 37 C.F.R. § 1.152 and 37 C.F.R. § 1.84(h)(4) address alternate positions, those regulations simply limit the ability of a patentee to show alternate positions in the same view.

This conclusion is not altered by defendants' citation to the Patent and Trademark Office's "A Guide to Filing a Design Patent" ("Guide"), which states that "[t]he alternate positions of a design, or an element of the design, must be shown in separate views." Def's 56.1 Statement ¶¶ 23-26, Ex. 5. The Guide appears to simply be an informal resource for parties prosecuting patents before the Patent and Trademark Office ("PTO"). Neither the Guide itself nor any authority raised by defendants suggest that the Guide is entitled to the force of law or even to any level of deference.[3] Moreover, although the quotation cited by defendants could, standing alone, be read to

---

[3]  Even the Manual of Patent Examining Procedure ("MPEP"), which is a more formal PTO publication, "does not have the force of law or the force of the rules in Title 37 of Code of Federal Regulations." Foreword to United States Patent and Trademark Office, MPEP (8th ed., rev. 2, May 2004); see also Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1439 (Fed. Cir. 1984) ("The MPEP has no binding force . . ., but is entitled to [judicial] notice so far as it is an official interpretation of statutes or regulations with which it is not in conflict.").

10

mean that alternate positions of a design must always be shown, in the context of the language of 37 C.F.R. § 1.152, the most reasonable interpretation of the Guide's statement is that *if* alternate positions are shown, they must be shown in separate views.

Defendants argue that even if there is no explicit categorical rule requiring the inclusion of alternate positions, drawings showing alternate positions may, depending on the circumstances, be necessary to meet the "complete disclosure" requirements of the statute and regulations. That contention, however, merely begs the question of what is required for complete disclosure. Neither the parties' papers nor further research reveal any analogous cases where a design with an alternate position was challenged as invalid because the patent drawings failed to show the alternate position.

Defendants' argument rests primarily on <u>Philco Corp. v. Admiral Corp.</u>, 199 F. Supp. 797 (D. Del. 1961). In <u>Philco</u>, the court, after a trial, invalidated a patent for a portable television receiver that consisted of a single front perspective drawing and included a written description suggesting that the back of the receiver was plain and flat. Because television technology at the time did not permit a flat back, and the potential backs for the receiver could have taken several different forms, the court concluded that, without knowing which

type of back would be used, it was impossible to determine the design's overall aesthetic effect. Id. at 805. By not portraying "an integral part" of the design, the patent failed to "enable those skilled in the art to learn and practice the invention" and prevented the court from applying the legal standard for infringement. Id.

Relying on Philco, defendants argue that because adjustable side arms are "an integral and substantial part of Plaintiff's device," the '250 patent was required to show the holder in the open position. Defs.' Summ. J. Mot. at 16-17. According to defendants, adjustable side arms are an integral part of the design in the '250 patent ("'250 design") because adjustable side arms are a "technological necessity." Id. at 17. Even assuming that Philco embodies a correct interpretation of the law, defendants' argument necessarily fails, on its own terms, because a palm pilot holder is not required to have adjustable side arms. Although the Mizco holder and the Commercial Embodiment both include adjustable side arms, plaintiff's experts both attest that electronics mount products can have either fixed or adjustable arms.[4]  Harald Richter Decl. ¶ 11; Dixon Decl. ¶ 12.

---

[4]  Defendants have filed motions in limine to preclude those witnesses from testifying as experts regarding invalidity, infringement and damages because they failed, in their depositions, to refer to certain legal standards governing those issues. For purposes of determining the motions at issue in this opinion, it is assumed that those witnesses may testify as experts. The question of whether the trial testimony of those witnesses should, in any way, be limited is rendered moot by the

Defendants, who must prove any facts critical to invalidity by clear and convincing evidence, offer no evidence that adjustable side arms are a "technological necessity."[5] As such, the '250 drawings are sufficient under the test laid out in <u>Philco</u>. Because defendants have failed to prove that the '250 patent is invalid for not including a drawing showing the holder in the open position, defendants' motion for summary judgment on this issue is denied, and plaintiff's motion for summary judgment on this issue is granted.

## b. Inconsistences In The '250 Drawings

Defendants claim that various inconsistencies in the '250 drawings render the '250 patent invalid for nonenablement and indefiniteness under 35 U.S.C. § 112, which states, in relevant part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, <u>in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same</u> . . . .
>
> The specification shall conclude with <u>one or more</u>

---

fact that defendants' summary judgment motion for non-infringement is being granted.

[5] At his deposition, Herbert Richter stated that "universal type" holders have "movable side arms in 99 percent of cases." Herbert Richter Dep. 61:64-62:14. That evidence was not cited by defendants in arguing this issue and is, in any event, insufficient to invalidate the '250 patent under <u>Philco</u> as that statement allows that some holders do not have movable side arms. <u>Id.</u>

> claims particularly pointing out and distinctly
> claiming the subject matter which the applicant
> regards as his invention.

(Emphasis added).

The MPEP states that "it is of utmost importance that the drawing . . . be clear and complete, and that nothing regarding the design sought to be patented is left to conjecture." MPEP § 1503.02 (8th ed., rev. 7, July 2008). Although the MPEP generally advises patent examiners to object to inconsistences so that the views may be made consistent, patent examiners are instructed to reject an application as "nonenabling and indefinite" where "the inconsistences are of such magnitude that the overall appearance of the design is unclear." MPEP §§ 1503.02, 1504.04.

Thus, in order for a design patent to be invalidated for indefiniteness, errors and inconsistencies in the patent drawings must be material and of such magnitude that the overall appearance of the design is unclear. See Park B. Smith, 2008 WL 650339, at *6 (citing MPEP § 1503.02 and rejecting, in dicta, invalidity challenge); Hadco Prods., Inc. v. Lighting Corp. of Am., 312 F. Supp. 1173, 1181 (E.D. Pa. 1970) (finding, after trial, patent not invalid for indefiniteness where "errors and inconsistencies in the drawings as issued are inconsequential"), vacated on other grounds, Hadco v. Walter Kidde & Co., 462 F.2d 1265 (3d Cir. 1972); Ex Parte Asano, 201 U.S.P.Q. 315, 317 (Bd.

Pat. App. & Inter. 1978) (reversing rejection of patent application with numerous minor inconsistencies and explaining that "[m]echanical drawing errors and inconsistencies between the figures of the drawing, which do not preclude the overall understanding of the drawing as a whole are an insufficient basis for holding the design both indefinite and insufficiently disclosed under 35 USC 112.").

At least in the context of design patents, the concepts of nonenablement and indefiniteness serve a similar function and have been applied somewhat interchangeably. See Seed Lighting, 2005 WL 1868152, at *8-9; see also Australia Vision, 29 F. Supp. 2d at 1159 (using terms nonenablement and indefiniteness interchangeably in analyzing argument that sunglasses design patent was invalid under 35 U.S.C. § 112 because drawings failed to disclose sufficient shape and contour); Ex Parte Asano, 201 U.S.P.Q. at 317 (explaining, in the context of dispute over inconsistent drawings, that issues related to enablement were "generally the same as" issues concerning definiteness).

Defendants point to four inconsistencies in the '250 drawings. Before analyzing these inconsistencies, a number of preliminary arguments raised by plaintiff should be addressed.

First, plaintiff points to the fact that after it filed suits against other defendants for infringement of the '250 patent, none of those defendants raised the alleged inconsistency

of the drawings during settlement negotiations. This fact is irrelevant in determining validity of the '250 patent in this case.

Second, plaintiff argues that the '250 drawings necessarily meet the statute's enablement and definiteness requirements because plaintiff used the '250 drawings to create a commercial embodiment of the design in the '250 patent. This argument, which would allow patentees to defeat definiteness and enablement challenges any time that the patentee produced a commercial embodiment of the design, must also be rejected as it would make the statutory requirements meaningless whenever a commercial embodiment is produced.

Third, plaintiff argues that summary judgment is not warranted because the patent examiner never identified any of the alleged inconsistencies. However, "the fact that the patent examiner failed to see material inconsistencies in the patent should not be taken as conclusive proof that the patent is valid . . . ." Park B. Smith, 2008 WL 650339, at *6. Although one district court has suggested, in the context of a similar challenge to allegedly inconsistent drawings, that "some deference [is owed] to the decision of the patent examiner," DCNL Inc. v. Almar Sales Co., No. 97-cv-3738, 1997 WL 913941, at *2 (N.D. Cal. Dec. 22, 1997) (finding patent valid in context of denying motion for preliminary injunction), aff'd, 178 F.3d

1308 (Fed. Cir. 1998) (unpublished table case), it is unnecessary to determine whether any such deference is appropriate in this instance, cf. Iron Grip Barbell Co., Inc. v. USA Sports, Inc., 392 F.3d 1317, 1323 (Fed. Cir. 2005) (explaining, in context of validity challenge, that "[o]n the legal issue of obviousness (as opposed to the underlying factual issues) the grant of a patent does not create a presumption of validity beyond the requirement that the party seeking to invalidate a patent must prove invalidity by clear and convincing evidence"). Even without giving any special deference to the patent examiner's decision, as explained below, the inconsistencies in the drawings do not warrant invalidating the '250 patent.

Finally, plaintiff argues that the '250 drawings are not inconsistent, relying on the declarations of plaintiff's two expert witnesses, who both conclude that "the drawings of the '250 patent are consistent" and that a person skilled in the art of designing electronics mount products would be able to make and use the drawings of the '250 patent to design a holder "without conjecture." Harald Richter Decl. ¶ 10; Dixon Decl. ¶ 12. These conclusory opinions do not aid the court's determination of invalidity. Despite the fact that some inconsistencies in the '250 drawings are, as discussed below, plainly apparent, plaintiff's experts refuse to acknowledge any inconsistencies and fail to address any of the specific inconsistencies alleged by

defendants.

Although plaintiff's various arguments are unpersuasive, a visual inspection of the '250 drawings alone compels a denial of defendants' motion for summary judgment on invalidity as the '250 drawings themselves resolve all the inconsistencies raised by defendants.

The first inconsistency raised by defendants focuses on the fact that Figure 1, which, unlike Figures 2, 3, and 4, is a perspective view, does not show the side arms overlapping the base, whereas in Figures 2, 3 and 4 the side arms do overlap the base. Because Figures 2, 3 and 4 are consistent with each other, the inconsistency in Figure 1 is inconsequential and does not render the overall appearance of the design unclear. See Antonious v. Spalding & Evenflo Cos., Inc., 217 F.3d 849, 1999 WL 777450, at **8 (Fed. Cir. 1999) (unpublished table case) (reversing summary judgment that had invalidated design patents and explaining that where Figures 2 and 3 "plainly showed" a feature that was allegedly shown inconsistently in Figure 4, "a person of skill in the art would primarily look to Figures 2 and 3 to determine the shape of the [disputed feature], and any associated discrepancies in Figure 4 would not be sufficient to preclude a person from gaining an overall understanding of the total substance of the designs"); cf. Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005) (stating, in

utility patent case, that "[o]nly claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite" (citations omitted)). It should be noted that although defendants' three experts each point out that Figure 1 is inconsistent, none of these experts explain why a person of skill in the art would not look primarily to Figures 2, 3 and 4 in determining whether the side arms overlap the base, given that those figures show a consistent design.[6]

Two of the other inconsistences cited by defendants also involve the situation where multiple views are consistent and only a single view is inconsistent. Although Figure 1 shows the top of the base as straight, the top of the base is curved in Figures 4 and 5.[7] Similarly, despite the fact that Figure 5

_____

[6] Some district courts have found expert testimony, or the lack thereof, relevant to the question of indefiniteness. See Seed Lighting, 2005 WL 1868152, at *8-9 (invalidating patent where, inter alia, defendant offered expert testimony regarding inconsistencies and plaintiff failed to come forward with "any evidence, facts, or expert testimony"); Hadco, 312 F. Supp. at 1181-82 (finding, after trial, that patent was not invalid for indefiniteness where plaintiff offered credible expert at trial and defendant failed to produce a witness "skilled in the art of designing [the disputed product]"); see also Australia Vision, 29 F. Supp. 2d at 1159 (denying, in context of similar challenge, defendant's summary judgment motion for invalidity where defendant "did not include any evidence or declarations by experts in the field to attest to the indefiniteness of the [the design patent]"). Although expert testimony may be critical in some circumstances, such testimony is not needed in the instant case to either point out the inconsistencies in the drawings or to determine whether the inconsistencies render the patent indefinite.

[7] In addition to the arguments that were previously addressed, plaintiff also contends that the patent is valid

appears to place the side arms toward the top of the base,

Figures 1, 4, and 6 all show the side arms toward the bottom of

the base. Again, defendants' experts do not explain why a person

of skill in the art would not look to the multiple views that are

consistent.

The final inconsistency pointed to by defendants involves the

shape of the side arms. Figure 6 clearly shows trapezoidal side

arms whereas the perspective view in Figure 1, which is somewhat

unclear as to this feature, appears to show rectangular, rather

than trapezoidal, side arms. Although there are no additional

views showing the shape of the side arms, invalidation of the

patent is not warranted based on this minor potential

inconsistency because Figure 6 plainly shows the side arms to be

trapezoidal in shape.

Seed Lighting Design Co., Ltd. v. Home Depot, No.

04-cv-2291, 2005 WL 1868152 (N.D. Cal. Aug. 3, 2005), upon which

defendants rely, is distinguishable and is, in any event, merely

persuasive authority. In Seed Lighting, the district court, on

---

because the inventor denied, at his deposition, that the '250
drawings contained any "mistakes." Herbert Richter Dep.
50:17-21. When asked specifically about the inconsistency
related to the curvature of the top of the base, the inventor
suggested that Figure 1 was not inconsistent because Figure 1 is
a perspective view. Herbert Richter Dep. 35:9-19. The straight
top of the base in Figure 1 cannot be explained away by the fact
that Figure 1 is a perspective view. In Figures 4 and 5, the
bottom of the base is shown to have the same curvature as the top
of the base. In Figure 1, however, the bottom of the base
retains this curvature whereas the top of the base in Figure 1 is
shown as straight.

summary judgment, invalidated a design patent for a lamp where there were mistakes and ambiguities in the drawings of three of the lamp's six major components. The court relied on the defendant's expert report as well as admissions by the inventor that one of the drawings of the lamp's shade was simply incorrect and that the shape of the lamp's base could not be determined from the inconsistent drawings. Although admissions by an inventor are, of course, not required for an indefiniteness finding, those admissions appear to have been critical to the court's decision in <u>Seed Lighting</u>. <u>Id.</u> at *9. More importantly, the court in <u>Seed Lighting</u> stressed the fact that the plaintiff failed to submit "any evidence, facts, or expert testimony." <u>Id.</u> In the instant case, however, the '250 drawings themselves, rather than the declarations of the parties' experts, are the only evidence needed to resolve the issue of indefiniteness.


## (2)

### Infringement

Determining design patent infringement involves two steps. <u>Elmer v. ICC Fabricating, Inc.</u>, 67 F.3d 1571, 1577 (Fed. Cir. 1995). First, the patent claim must be properly construed to determine its meaning and scope. <u>Id.</u> Second, the claim as properly construed must be compared to the accused design. <u>Id.</u>

Although claim construction is a question of law, <u>Bernhardt,</u> <u>L.L.C. v. Collezione Europa USA, Inc.</u>, 386 F.3d 1371, 1375 (Fed. Cir. 2004), the ultimate determination of design patent infringement is a question of fact that plaintiff must prove by a preponderance of the evidence, <u>L.A. Gear v. Thom McAn Shoe Co.</u>, 988 F.2d 1117, 1125 (Fed. Cir. 1993).

## a. Claim Construction

"A design patent's claim is limited to what is shown in the application drawings." <u>Rockport Co. v. Deer Stags, Inc.</u>, 65 F. Supp. 2d 189, 192 (S.D.N.Y. 1999) (citing <u>In re Mann</u>, 861 F.2d 1581, 1582 (Fed. Cir. 1998); <u>Elmer</u>, 67 F.3d at 1577; <u>In re Harvey</u>, 12 F.3d 1061, 1064 (Fed. Cir. 1993)). "Given the recognized difficulties entailed in trying to describe a design in words," the Federal Circuit recently explained that, in design patent cases, "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." <u>Egyptian Goddess v. Swisa, Inc.</u>, 543 F.3d 665, 679 (Fed. Cir. 2008) (<u>en banc</u>), <u>petition for cert. filed</u>, (U.S. Feb. 2, 2009) (No. 08-1031). That said, trial courts, may still find it useful to: (1) describe "various features of the claimed design as they relate to the accused design and the prior art"; (2) "describe the role of particular conventions in design patent drafting, such as the role of broken lines"; (3) describe "the

22

effect of any representations that may have been made in the course of the prosecution history"; and (4) "distinguish[] between those features of the claimed design that are ornamental and those that are purely functional." Id. at 680

In the instant case, a detailed verbal description of the '250 patent is unnecessary; it is appropriate to "rely upon the illustrations set out in the [the patent], as they better represent the claimed design," Arc'teryx Equip., Inc. v. Westcomb Outerwear, Inc., No. 07-cv-59, 2008 WL 4838141, at *2 (D. Utah Nov. 4, 2008). It should, however, be noted that the various inconsistencies in the '250 drawings, which were previously addressed in the context of defendants' indefiniteness challenge, warrant a brief description. Those inconsistencies should be construed as follows: (1) the side arms overlap the base as shown in Figures 2, 3 and 4; (2) the top of the base is curved as shown in Figures 4 and 5; (3) the side arms are located towards the bottom of the base as shown in Figures 1, 4 and 6; and (4) the side arms have a trapezoidal shape as shown in Figure 6. Finally, neither party argues that any features visible in the '250 drawings should be excluded based on functionality.

**b. Federal Circuit's Recent Egyptian Goddess Decision**

In Egyptian Goddess, the Federal Circuit, sitting en banc, not only clarified claim construction in design patent cases, but also established a new standard for design patent infringement.

Prior to Egyptian Goddess, in order to show infringement, plaintiffs were required to meet both the "ordinary observer" test and the "point of novelty" test. Id. at 670-71. Under the ordinary observer test, which was established by the Supreme Court in Gorham Co. v. White, 14 Wall. 511, 81 U.S. 511, 20 L.Ed. 731 (1871), "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." Id. at 528. Under the point of novelty test, which can be traced to Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423 (Fed. Cir. 1984), a plaintiff was required to show that the accused design appropriated the specific points of novelty found in the claimed design. Egyptian Goddess, 534 F.3d at 670-71. In Egyptian Goddess, the Federal Circuit rejected the point of novelty test as a "second and free-standing requirement" and subsumed consideration of the prior art into a modified version of the ordinary observer test in which the "ordinary observer is deemed to view the differences between the patented design and the accused product in the context of the prior art." Id. at 676. The Federal Circuit, however, explained that:

> In some instances, the claimed design and the
> accused design will be sufficiently distinct that
> it will be clear without more that the patentee has
> not met its burden of proving the two designs would

> appear "substantially the same" to the ordinary
> observer, as required by Gorham.  In other
> instances, when the claimed and accused designs are
> not plainly dissimilar, resolution of the question
> whether the ordinary observer would consider the
> two designs to be substantially the same will
> benefit from a comparison of the claimed and
> accused designs with the prior art . . . .

Id. at 678.

Thus, although Egyptian Goddess established a new standard for analyzing the impact of prior art in determining infringement, a plaintiff must, as a threshold matter, show that the claimed and accused designs are not "plainly dissimilar."  A comparison of the two designs with the prior art is only required under the modified Gorham test set out in Egyptian Goddess if this threshold showing is met.[8]  See Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc., No. 06-cv-995, 2009 WL 691594, at *8 (N.D. Tex. Mar. 16, 2009) (granting summary under Egyptian Goddess where designs were "plainly dissimilar" and finding it unnecessary to reference the prior art).

c.  **Ordinary Observer Test**

As noted above, under the ordinary observer test, "if, in

---

[8]  Because Egyptian Goddess had not yet been decided when the parties filed their briefs in August 2008, those papers analyze the issue of infringement under the prior framework. Neither party has submitted any supplemental briefing to address Egyptian Goddess.  Normally, additional briefing would have been requested of the parties.  However, any additional briefing would not have been helpful in light of the fact that the two designs are plainly dissimilar, and therefore no analysis of the prior art is required.

the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." <u>Gorham</u>, 81 U.S. at 528; <u>see also</u> <u>Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.</u>, 162 F.3d 1113, 1118 (Fed. Cir. 1998) ("Infringement of a design patent requires that the designs have the same general visual appearance, such that it is likely that the purchaser would be deceived into confusing the design of the accused article with the patented design."). "There can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar." <u>OddzOn Prods., Inc. v. Just Toys, Inc.</u>, 122 F.3d 1396, 1405 (Fed. Cir. 1997). The patented and accused designs, however, need not be identical in order for design patent infringement to be found. <u>See Egyptian Goddess</u>, 543 F.3d at 678 (explaining that under the ordinary observer test, "infringement will not be found unless the accused article 'embod[ies] the patented design or any colorable imitation thereof.'") (citations omitted).

The '250 patent, which has generally clean lines and a simple look, consists of a generally rectangular base with two side arms attached to the lower portion of the base. The side arms of the '250 design only slightly overlap the base. The

front of the base is flat and unornamented, except for a small
lip at the bottom of the base.

When the Mizco holder is in the closed position, the '250
design and the Mizco holder are plainly dissimilar. Although, in
the closed position, the base and side arms of the Mizco holder
have the same general shape and configuration as the '250 design,
the Mizco holder significantly differs from the '250 design in
critical respects. Most notably, in contrast to the '250 design,
the side arms of the Mizco holder do not extend beyond the edge
of the base, giving the Mizco holder a silhouette that is clearly
distinct from the '250 design. See Minka Lighting, 2009 WL
691594, at *6 ("Similar silhouettes or comparable contours
between a patented and accused design can make them 'not plainly
dissimilar,' thus counseling comparison with the prior art.").
The two silhouettes are strikingly different when the backs of
the two designs are examined. In '250 patent Figure 5, the side
arms are visible; however, in Mizco Holder Picture #3, no side
arms are visible. The fact that the Mizco holder's side arms are
set completely within the border of the base also differentiates
the appearance of the Mizco holder from the '250 design when
viewed from other angles. Compare '250 patent Figures 3-4 with
Mizco Holder Pictures #1, 4. In addition, the side arms of the
Mizco holder are wider than the side arms in the '250 design and
are also larger relative to the length of the sides of the base.

27

The size of the Mizco holder's side arms, in conjunction with the placement of the side arms within the border of the base, give the Mizco holder a different look than the less obstructed base of the '250 design and contribute to the overall dissimilarity between the two designs. As such, in the closed position, the Mizco holder conveys an overall visual impression that is "sufficiently distinct" from the '250 design.

Furthermore, when the Mizco holder is in the open position, the two designs are even more dissimilar.[9] When the side arms of the Mizco holder are extended, the two side arm extensions, which have a staggered design, become visible. Since the side arm extensions do not cover the entire area previously occupied by the side arms, when the side arms are extended, the two notches that are cut into the base are also revealed. The notches, which are more noticeable in the open position, significantly affect the contours and overall look of the holder. In the open position, the notches give the Mizco holder a look that sharply contrasts with the '250 design. It is clear that no ordinary observer viewing the Mizco holder in the open position could possibly be deceived into confusing the design of the Mizco

_____

[9] Plaintiff never argues that it is inappropriate to compare the '250 design with the Mizco holder in the open position. Even if such a comparison were improper, the Mizco holder in the closed position is plainly dissimilar to the '250 design.

holder with the '250 design.[10]

It is improper to focus on specific features that differ between two designs if such a focus ignores the critical issue of whether the overall designs, as a whole, are substantially similar. Amini Innovation Corp. v. Anthony California, Inc., 439 F.3d 1365, 1372 (Fed. Cir. 2006) (stressing that trial court must "analyz[e] the design as a whole from the perspective of an ordinary observer" and must avoid relying simply on an "element-by-element comparison" of the patented design and alleged infringing device). Summary judgment, however, is appropriate where specific ornamental features substantially impact the overall design of the accused product and distinguish the overall design of the accused product from the patented design. See Minka Lighting, 2009 WL 691594, at *7 (granting summary under Egyptian Goddess where "distinct ornamental 'hook'" in lamp support arm, which was "obvious at first glance," made the accused product "readily distinguishable from" the patented design); see also Antonious v. Spalding & Evenflo Cos., Inc., 217 F.3d 849, 1999 WL 777450, at **8-9 (Fed. Cir. 1999) (unpublished table case) (affirming district court's grant of summary judgment, which noted that a specific feature "unmistakably

---

[10] In plaintiff's response to defendants' 56.1 statement, plaintiff, at one point, generally concedes that a palm pilot holder in the open position has a different design than when it is in the closed position. Pl's Resp. to Defs.' 56.1 Statement ¶ 18.

distinguished" the accused products, because "no reasonable jury would conclude that the overall designs of the accused products and the patents are so substantially similar that an ordinary observer would be deceived . . ."); <u>Abbott Labs. v. Mead Johnson & Co.</u>, No. 93-C-6596, 1996 WL 332449, at *10 (N.D. Ill. June 13, 1996) (granting summary judgment for non-infringement where the "overall appearance" of the two devices made it clear that they "serve the same purpose," but two differences, which were substantial in the context of the "whole design," ensured "that the accused device will not be confused with, or mistaken for, the patented device").[11]  When the Mizco holder is in the closed position, the size of the side arms and, more importantly, their placement within the border of the base are prominent features that substantially affect the overall design of the Mizco holder. Similarly, when the Mizco holder is in the open position, the notches and side arm extensions have a significant impact on the overall appearance of the holder.  These features render the overall design of the Mizco holder plainly dissimilar from the '250 design.

**d.  Plaintiff's Arguments**

Plaintiff puts forth only two arguments regarding the

---

[11]  Pre-<u>Egyptian Goddess</u> decisions granting summary judgment under the ordinary observer test can still provide some guidance in analyzing infringement under the threshold "plainly dissimilar" standard set out in <u>Egyptian Goddess</u>.

ordinary observer test. First, plaintiff argues that a finding of overall similarity is a question of fact. Although plaintiff is correct that infringement is a question of fact, where appropriate, courts, in applying the ordinary observer test, both before and after Egyptian Goddess, have not hesitated to grant summary judgment for defendants based on a "mere visual comparison of the patented design and the accused product." Tropicana Prods., Inc. v. Land O'Lakes, Inc., 286 F. Supp. 2d 343, 345 (D. Del. 2003) (granting summary judgment where designs did not share "an overall visual similarity" ), appeal dismissed, 110 Fed. App'x. 125 (Fed. Cir. 2004); see also, e.g., Minka Lighting, 2009 WL 691594, at *7-8 (granting summary judgment post-Egyptian Goddess); Lawman Armor Corp. v. Master Lock Co., No. 02-civ-6605, 2004 WL 440177, at *5-8 (E.D. Pa. Mar. 11, 2004) (relying on visual comparison and granting summary judgment where there were such "[s]ubstantial differences" between the patented designs and the accused designs that the accused designs did not "create the same visual impression as the [patented design]"), aff'd, 112 Fed. App'x. 55 (Fed. Cir. 2004).

Second, plaintiff argues that summary judgment is not warranted because plaintiff's experts opine in their declarations that an ordinary observer would purchase a Mizco holder believing it to be the same as the '250 design. Plaintiff's experts, who are both part owners of plaintiff, have experience

31

visiting retail locations selling electronic mount products and have observed purchasers of those products. Harald Richter Decl. ¶ 5; Dixon Decl. ¶ 6. Based on that experience, they both conclude that an ordinary observer would find the Mizco holder to be "substantially the same" as the '250 design. Harald Richter Decl. ¶ 7; Dixon Decl. ¶ 8.

Since a visual comparison alone is sufficient to determine non-infringement under the ordinary observer test, expert testimony submitted by a plaintiff cannot create a material issue of fact where the visual comparison reveals that the alleged infringing product is not substantially similar to the patented design. See Lawman Armor, 2004 WL 440177, at *8 (finding that plaintiff's expert report did not create a material issue of fact where the court's own visual comparison showed that the allegedly infringing designs were not substantially similar to the patented design); Schnadig Corp. v. Collezione Europa U.S.A., No. 01-C-1697, 2002 WL 31253750, at *11 (N.D. Ill. Oct. 4, 2002) (granting summary judgment for non-infringement based on ordinary observer test and refusing to rely on expert testimony from both parties concerning whether the ordinary observer test was satisfied); cf. Bush Indus, Inc. v. O'Sullivan Indus., Inc., 772 F. Supp. 1442, 1450 (D. Del. 1991) (finding that parties' experts failed to present the viewpoint of an ordinary observer and noting that "[e]xpert testimony is unnecessary under the ordinary

observer prong of the infringement test"). The summary conclusions of plaintiff's experts are insufficient to preclude a finding of non-infringement as a matter of law.

As such, defendants' motion for summary judgment on non-infringement is granted.


### (3)

### Other Defenses

In the Joint Pre-Trial Order, defendants also claim that the patentee engaged in inequitable conduct (third and ninth defenses) and that plaintiff waived its patent rights (fourth defense). Because defendants' motion for summary judgment on non-infringement is being granted, it is unnecessary to address those defenses.

## Conclusion

For the reasons stated above, defendants' motion for summary judgment is denied on the issue of invalidity and is granted on the issue of non-infringement. Plaintiff's motion for partial summary judgment is granted in part and denied in part as moot. Defendants' motion for summary judgment on the same grounds raised in plaintiff's motion is denied in part on the merits and in part as moot. Defendants' motion to strike plaintiff's errata sheet and to declare plaintiff's patent unenforceable is denied as moot. Defendants' motions in limine are denied as moot. The Clerk of the Court is directed to close the case.

Dated: Brooklyn, New York
       March 31, 2009

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge

# Appendix



*FIG.1*



*FIG.2*



*FIG.3*



*FIG.6*



*FIG.4*



*FIG.5*

## Mizco Holder Picture #1



## Mizco Holder Picture #2



# Mizco Holder Picture #3



# Mizco Holder Picture #4



## Mizco Holder Picture #5



## Mizco Holder Picture #6

