UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

HR US LLC,

        Plaintiff,

  -against-

MIZCO INTERNATIONAL, INC.; AND
ALBERT MIZRAHI,

        Defendants.

----------------------------------X

<u>MEMORANDUM AND ORDER</u>

Civil Action No.
07-CV-2394 (DGT)(JO)

Trager, J:

    HR US LLC ("plaintiff") is the owner of U.S. Patent No. Des. 431,250 ("the '250 patent"), a design for a Palm Pilot mount for use in automobiles.  Palm Pilot Holder, U.S. Patent No. 431,250 (issued Sept. 26, 2000).  Plaintiff brought suit against Mizco International Inc. ("Mizco") and Albert Mizrahi ("Mizrahi") (collectively "defendants") alleging defendants sold and distributed products that infringed the '250 patent.  Defendants' motion for summary judgment was denied on the issue of invalidity and granted on the issue of non-infringement.  <u>HR US LLC v. Mizco Int'l</u>, No. cv-07-2394, 2009 WL 890550 (E.D.N.Y. Mar. 31, 2009).  Seeking attorney's fees, defendants now move for a declaration that this case is "exceptional" within the meaning of 35 U.S.C. § 285, which provides that "[t]he court in exceptional cases may award reasonable attorney's fees to

the prevailing party."  For the reasons set forth below, defendants'
motion is denied.


**Background**

Plaintiff first became aware of defendants' allegedly
infringing products in the early half of 2006.  Compl. at 3.  In the
summer of 2006, plaintiff's counsel sent a letter notifying
defendants of their alleged infringement of the '250 patent.  Id.
On February 6, 2007, plaintiff, a Delaware corporation with its
principle place of business in New Jersey, filed a patent
infringement suit against defendants in the Eastern District of
Virginia ("EDVA").  Id. at 6.  Defendant Mizco is a New York
corporation with its principle place of business in Brooklyn, New
York.  Id.  Defendant Mizrahi is a resident of Brooklyn.  Id.

On February 7, 2007, defendants received a letter from
plaintiff's attorney giving notice of the impending suit and
extending an offer to discuss a settlement.  Pl.'s Mem. of Law in
Opp'n to Defs.' Mot. for Ext. of Time, Ex. 1.  Defendants were served
with the complaint on March 13, 2007.

Defendants served plaintiff's attorney with an answer on April
9, 2007, five days after it was due.  Decl. of John H. Thomas in Supp.
of Pl.'s Req. for Entry of Default at 1.  Contrary to EDVA local civil
rule 83.1(D), the answer was not signed by a member of the bar of

the EDVA.  Id.  While waiting for a properly signed answer from defendants, plaintiff's attorney sent two letters indicating plaintiff would consent to an extension and not seek a default judgment if defendants agreed not to dispute jurisdiction or venue. Pl.'s Br. in Opp'n to the Mot. for Ext. of Time, Ex. 3 and 4.

On April 23, 2007, defendants filed a motion for an extension of time to file their answer.  That same day, defendants' answer, duly signed by a Virginia attorney, was delivered to the court, but was not filed because the motion for an extension was pending.  On April 24, 2007, plaintiff sought an entry of default, which was entered by the clerk on May 3, 2007.

Shortly thereafter, defendants moved under 28 U.S.C. § 1404(a) to transfer the case to the Eastern District of New York ("EDNY"). Defendants maintained that defendants' contact with the EDVA was minimal and that the location of plaintiff's counsel was the only connection plaintiff had to the EDVA.  Defendants also argued that policy factors weighed in favor of transferring the case and that there were at least two venues where the case could have been brought that were more convenient to both parties and closer to the center of the accused activity, witnesses and evidence.

Plaintiff argued that defendants' motion to transfer was moot in light of defendants' default.  Furthermore, plaintiff contended that even if defendants' motion was not moot, the sale of defendants'

allegedly infringing products at retail locations in the EDVA was sufficient to support proper venue in the district. While defendants' motions to transfer venue and to extend the time to answer were pending, plaintiff filed a motion for default judgment.

At a hearing on May 22, 2007, Judge Hudson denied plaintiff's motion for default judgment. Defendants' motion to transfer venue and motion for an extension of time were both granted.[1] Judge Hudson found that venue was proper in the EDVA, but concluded that a transfer to the EDNY was appropriate given the lack of connection to Virginia, including the absence of any witnesses or evidence in Virginia, and the inconvenience to both parties of litigating in the EDVA. Hr'g Tr. 22, 26, 30, May 22, 2007; Order, May 22, 2007.

In the EDNY, the case proceeded into discovery. At the initial conference, defense counsel sought to stay discovery pending an anticipated summary judgment motion on invalidity based on inconsistencies in the patent drawings. Hr'g Tr. at 7-8, 15, July 20, 2007. Defense counsel also informed Judge Orenstein that defendants planned to make an additional summary judgment motion concerning non-infringement. Id. at 7. However, defense counsel

---

[1] Because defendants' counsel, and not the client, was found to be solely responsible for the failure to file a timely answer, monetary sanctions were only levied against defendants' counsel. Hr'g Tr. 19, May 22, 2007.

was not planning on filing the non-infringement motion until after the proposed invalidity motion was decided (and, if that motion was denied, until after discovery was completed).  Id. at 15.  Although defense counsel asserted that defendants had "strong arguments of non-infringement," defense counsel also stated that the non-infringement motion was "less of a clear motion than [the invalidity] motion" and that the non-infringement motion was "not as strong [as the invalidity motion] because the court could always say . . . there may be some factual issue."  Id. at 7-8.  Judge Orenstein ultimately denied defendants' request to stay discovery, but did note that a renewed motion to stay discovery would be considered if and when defendants actually made a motion for summary judgment.  Id. at 27.

Sometime in August 2008, defendants attempted to negotiate a settlement.  Decl. of Mizrahi in Supp. of Defs.' Mot. to Recover Att'y's Fees ¶ 2 ("Mizrahi Decl.").  According to Mizrahi, during these negotiations, plaintiff's part-owner, Steven Dixon, admitted that "this case never should have been brought by HR, and that he had been opposed to the filing of this case against Defendants."[2]  Id. Dixon also informed Mizrahi that he was no longer partners with Herbert Richter, the inventor of the '250 patent, and Harald Richter,

_____

[2]  Plaintiff argues that statements made during settlement discussions are not admissible.  See discussion infra.

Herbert Richter's son and a former employee and part owner of HR US LLC.  Id.  Dixon also told Mizrahi that it was not Dixon, but rather Herbert and Harald Richter (collectively "the Richters"), who had made the decision to go forward with the case.  Id.  According to Mizrahi, Dixon initially offered a settlement where plaintiff would drop its suit and would assign the '250 patent to Mizco.  Id. ¶ 3. After defendants objected to this settlement and requested some reimbursement for their attorney's fees, Dixon then offered to also pay $10,000 to defendants.  Id. ¶¶ 3-5.  Defendants declined to settle because they had already incurred approximately $100,000 in attorney's fees.  Id. ¶¶ 5-6.

Around the same time as the settlement negotiations, the parties filed a number of motions.  Plaintiff filed a motion for partial summary judgment, contending that: (1) the '250 patent was not invalid for failing to show the claimed holder in the open position; (2) the '250 patent was not unenforceable for any failure to disclose prior art references to the Patent and Trademark Office ("PTO") during the application process; and (3) plaintiff did not waive its patent rights.  Defendants also filed a motion for summary judgment, arguing that there was no infringement of the '250 patent and that the '250 patent was invalid for three reasons: (1) defects and inconsistencies in the patent's drawings resulted in an insufficient description for a person skilled in the art to be able to reproduce

the design; (2) the patent drawings failed to show the design in the open position; and (3) Herbert Richter engaged in inequitable conduct when he failed to disclose prior art references to the PTO. At the same time, defendants filed a motion seeking to strike an errata sheet from Herbert Richter's deposition and to have the '250 patent invalidated based on additional inequitable conduct by Herbert Richter stemming from an alleged misrepresentation in his patent declaration. Defendants also filed two motions in limine to exclude plaintiff's experts, Dixon and Harald Richter, as unqualified.

On March 31, 2009, an opinion was issued on the various motions. HR US, 2009 WL 890550. Familiarity with the details of that opinion is assumed. Defendants' motion for summary judgment was granted on the issue of non-infringement. A comparison of the '250 patent and the accused design revealed that they were plainly dissimilar. It was therefore unnecessary to perform any analysis of prior art to decide the issue of infringement. Defendants' motion for summary judgment on the issue of invalidity was denied; the patent's failure to show the claimed holder in the open position did not invalidate the patent and the inconsistencies in the patent drawings were inconsequential. Plaintiff's motion for partial summary judgment was granted in part and denied in part as moot. Given the grant of summary judgment on the issue of non-infringement, defendants' inequitable conduct defense based on an alleged failure to disclose

prior art was not reached. Similarly, defendants' motion to strike Richter's errata sheet and invalidate the patent, as well as defendants' two motions in limine to exclude plaintiff's experts, were denied as moot.

Although plaintiff filed a notice of appeal to the Federal Circuit, the appeal was dismissed for failure to prosecute after plaintiff failed to file a timely brief.

## Discussion

At bar is defendants' motion to recover attorney's fees. Specifically, defendants request a finding that plaintiff's decision to pursue a frivolous suit and misconduct during litigation make this an "exceptional" case within the meaning of 35 U.S.C. § 285 and warrants an award of fees.

The determination of whether to award attorney's fees under § 285 is a two-step process. Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1460 (Fed. Cir. 1998)(en banc). A district court must first make a factual determination that the case is exceptional. Id. Then the district court must exercise its discretion to decide whether an award of fees is appropriate. Id.

Initially, the prevailing party must establish, by clear and convincing evidence, that, under the totality of the circumstances, the case is exceptional. Beckman Instruments, Inc., v. Produkter

<u>AB</u>, 892 F.2d 1547, 1551 (Fed. Cir. 1989); <u>Eltech Systems Corp. v.</u>
<u>PPG Industries, Inc.</u>, 903 F.2d 805, 811 (Fed. Cir. 1990).  Factors
that may be considered in a determination of exceptionality include
"misconduct during litigation, vexatious or unjustified litigation,
or a frivolous suit."  <u>Standard Oil Co. v. American Cyanamid Co.</u>,
774 F.2d 448, 455 (Fed. Cir. 1985) (affirming district court's
determination of non-infringement and invalidity and remanding for
a determination of exceptionality).

However, a district court may, in its discretion, decline to
award attorney's fees even if a case is found to be exceptional.
<u>Modine Mfg. Co. v. Allen Group, Inc.</u>, 917 F.2d 538, 543 (Fed. Cir.
1990) (affirming district court's denial of § 285 fees to prevailing
patentee even though the jury found willful infringement and the case
was found to be exceptional); <u>J.P. Stevens Co. v. Lex Tex, Ltd.</u>, 822
F.2d 1047, 1050-53 (Fed. Cir. 1987) (affirming district court's
denial of § 285 fees to prevailing accused infringer despite finding
of exceptionality).  In deciding whether or not to exercise
discretion and award fees, a district court may consider "the
closeness of the question, litigation behavior, and any other factors
whereby fee shifting may serve as an instrument of justice."  <u>Nat'l</u>
<u>Presto Indus., Inc. v. West Bend Co.</u>, 76 F.3d 1185, 1197 (Fed. Cir.
1996) (affirming district court's discretionary denial of attorney's
fees despite jury's finding of willful infringement, which was

sufficient to meet the "extraordinary case" criterion of § 285).

Although the factors under consideration in the two steps of the

§ 285 analysis are similar, the steps nevertheless remain separate.

See Reactive Metals & Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1583

(Fed. Cir. 1985) ("The issue of discretion comes into play, not in

determining whether the case is exceptional, but in deciding, with

respect to an exceptional case, whether the award of attorney fees

was appropriate . . . ."), overruled on other grounds by Kingsdown

Medical Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867 (Fed. Cir.

1988) (en banc).

When the prevailing party is the accused infringer, attorney's

fees will be awarded only where it is necessary to prevent a gross

injustice to the accused infringer because the patent was procured

in bad faith or the patentee litigated the infringement claim in bad

faith.  Forest Labs., Inc. v. Abbot Labs., 339 F.3d 1324, 1329 (Fed.

Cir. 2003) (reversing district court's finding of exceptionality

because the district court erred in finding that patentee engaged

in bad faith litigation).  Vexatious, unjustified or frivolous

litigation constitutes bad faith.  Id. at 1329-30.

In this case, the relevant question is whether the claim was

litigated in bad faith, either because the infringement suit was

frivolous or because the plaintiff engaged in litigation misconduct.

Before addressing those issues, it must be noted that plaintiff

contends, without citation to any authority, that defendants' motion should be denied because defendants have not provided billing records in support of their motion. Although such records would be necessary to establish the ultimate amount of any fee award, those records are not necessary to determine the threshold question of whether or not this is an exceptional case that warrants a fee award.

**a. Litigation Misconduct**

Misconduct during litigation or vexatious litigation may form the basis of a finding of exceptionality under § 285. <u>Brooks Furniture Mfg. v. Dutailier Int'l, Inc.</u>, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Defendants contend that plaintiff engaged in five types of vexatious litigation or misconduct. An analysis of each of these points, in turn, yields the conclusion that the plaintiff did not engage in litigation misconduct.

**i. Filing in the EDVA**

Defendants first contend that plaintiff improperly filed the suit in the EDVA in order to harass defendants and to force defendants into an unfavorable settlement agreement. There is no evidence to support this contention; to the contrary, plaintiff had a legitimate purpose for filing in the EDVA and Judge Hudson explicitly found that venue was proper there. Hr'g Tr. 22-23, 25-26, 30, May 22, 2007.

At the hearing on defendants' motion to transfer venue under

28 U.S.C. § 1404(a), Judge Hudson stated that the plaintiff had "every right to bring the case [in the EDVA]. . . . <u>There's nothing wrong with him filing it here</u>. I have personal jurisdiction. I just think it's better tried elsewhere because that's where the witnesses and the nucleus of activities are located." <u>Id.</u> at 30 (emphasis added). Thus, although Judge Hudson exercised his discretion to transfer the case to the EDNY for convenience purposes, he did not find that venue was improper in the EDVA.[3] <u>Id.</u> at 22, 26, 30.

Plaintiff did not engage in litigation misconduct by filing in a proper, but ultimately inconvenient venue. <u>Cf.</u> <u>Newtown v. Thomason</u>, 22 F.3d 1455, 1464 (9th Cir. 1994) (holding that under Rule 11, filing in an "inconvenient but proper forum" is "sanctionable only where the choice is made for an 'improper purpose' such as harassment"); <u>Sussman v. Bank of Israel</u>, 56 F.3d 450, 457 (2d Cir. 1995) (noting that it is doubtful that "commencement of a suit in an inconvenient forum may be the basis of Rule 11 sanctions where venue was not improper" and holding that Rule 11 sanctions were improper where venue was proper, but district court exercised discretion to dismiss for forum non conveniens). Moreover,

---

[3] In defendants' motion to transfer venue, defendants never asserted that venue was improper in the EDVA. Moreover, by moving for a transfer under 28 U.S.C. § 1404(a) rather than 28 U.S.C. § 1406(a), defendants appear to have conceded that venue was not improper in the EDVA.

defendants have not shown that plaintiff's filing in the EDVA was intended to harass them. The fact that plaintiff's counsel was located in the EDVA shows that plaintiff had a legitimate purpose for filing there – it was convenient for plaintiff's counsel, who had represented plaintiff for a number of years. See Hr'g Tr. 25, May 22, 2007 (representation by plaintiff's attorney that he had counseled plaintiff for a number of years and that this was "certainly a factor" in filing in Virginia). There is no evidence that plaintiff decided to bring suit in the EDVA in order to harass defendants and, only then, hired counsel in the EDVA.

In sum, plaintiff's filing in the EDVA was not vexatious.

## ii. Sustained Litigation of Unenforceable Patent

Defendants assert plaintiff also acted in bad faith by continuing to litigate even after the patent was rendered unenforceable.[4] Defendants claim the patent became unenforceable when Herbert Richter admitted at his deposition that he failed to "review" the drawings in the '250 patent even though he submitted

---

[4] In discussing this issue as well as plaintiff's allegedly improper use of an errata sheet and improper designation of experts, defendants specifically request the fees they incurred in responding to these actions. Because, as explained infra, these actions do not rise to the level of litigation misconduct, defendants are not entitled to such fees on that ground. However, defendants could still be entitled to some or all of those fees if plaintiff's underlying infringement claim is found to have been frivolous. See discussion infra.

a declaration to the PTO, under penalty of perjury, stating that he "reviewed and underst[ood] the contents" of the patent application. Decl. of Ezra Sutton in Supp. of Defs.' Mot. to Strike, Ex. A.

During discovery, Herbert Richter, the inventor of the mount described by the '250 patent and a native German speaker, was deposed via telephone, with all parties and a translator calling in from separate locations. Herbert Richter Dep. 6 (Jan. 30, 2008). Before the questioning began, plaintiff's attorney reserved Richter's right to correct the transcript for any misunderstandings or misinterpretations. Id. During the deposition, the following exchange occurred:

> Q: Did you review the drawings before the patent application was filed?
> A: No. No.
> Q: You did not review the drawings?
> A: No, I didn't review them.
> Q: What did you review?
> A: Practically nothing. I just looked at the drawings and I did not go into any kind of detail.
> Q: Did you read the description of Figures 1 to 6?
> A: This has been such a long time, I do not remember.
> THE WITNESS: I saw the design appended and I, and I see it was my production. Okay, I have so many, something to do. It was for myself clear.

Id. at 48-49.

When Herbert Richter's deposition was reconvened two weeks later, he contradicted his earlier answers by testifying that he had, in fact, "reviewed" the drawings. Herbert Richter Dep. 131 (Feb. 15, 2008). Subsequently, on May 10, 2008, Herbert Richter submitted

14

an errata sheet explicitly changing his negative answers in his
January 20 deposition to affirmative answers without listing any
reasons for the changes.  Herbert Richter Errata Sheet (dated May
10, 2008).  The errata sheet also deleted the phrase "[p]ractically
nothing" from Herbert Richter's original answer.  Id.

Defendants assert that Herbert Richter's admission is evidence
of inequitable conduct that rendered the patent unenforceable.  In
order for the '250 patent to be found unenforceable under the
inequitable conduct doctrine, the alleged misrepresentation by
Herbert Richter to the PTO would had to have been both material and
intended to deceive the PTO.  See Honeywell Int'l Inc. v. Universal
Avionics Sys. Corp., 488 F.3d 982, 999 (Fed. Cir. 2007) ("In
determining whether inequitable conduct occurred, a trial court must
determine whether the party asserting the inequitable conduct
defense has shown by clear and convincing evidence that the alleged
nondisclosure or misrepresentation occurred, that the nondisclosure
or misrepresentation was material, and that the patent applicant
acted with the intent to deceive the [PTO].").  Notably, Herbert
Richter's declaration to the PTO implicitly references the
inequitable conduct doctrine, stating that "willful false statements
may jeopardize the validity of the application or any patent issued
thereon."  Declaration and Power of Attorney for Design Patent
Application (37 CFR 1.63)(no. 70).

However, plaintiff's continued pursuit of the litigation after Herbert Richter's deposition is not evidence of bad faith because plaintiff had colorable grounds to contest defendants' inequitable conduct claim.

First, when Herbert Richter's deposition was reconvened on February 15, 2008, he testified, in response to a question by his own attorney, that he did review the patent drawings. This testimony alone created an issue of fact as to whether or not he actually reviewed the patent drawings. More importantly, the record reveals reasons why Herbert Richter may have changed his testimony – reasons that were plausible enough such that a fact-finder might well have credited the testimony from the second day of the deposition. On the first day of the deposition, Herbert Richter stated that he "just looked at the drawings" without going into "any kind of detail," but did not "review" them. That testimony is confusing and somewhat contradictory, particularly given that the difference between "just looked at" and "reviewed" is merely a matter of the degree to which he scrutinized the application. Moreover, on the first day of the deposition, Herbert Richter also testified that he recognized that the design in the patent application was his and that it was "clear" to him. Given all of these statements, a fact-finder might well have viewed Herbert Richter's later assertion that he did, in fact, "review" the application, as a reasonable clarification of his

earlier testimony.

In addition, the circumstances of the deposition lend support to the notion that Herbert Richter may have simply been confused about the meaning of the word "review" at the initial day of the deposition. He is not a native English speaker and was answering the questions through the filter of an interpreter. Herbert Richter Dep. 4 (Jan. 30, 1998). Furthermore, the deposition took place by conference call with all parties calling in from separate locations, creating further opportunities for confusion. Id. at 6.

Second, even if a fact-finder would not have credited Herbert Richter's statement from the second day of the deposition, his statements from the first day of the deposition, standing alone, provided plaintiff with a good-faith basis to argue that any "misrepresentation" in the PTO declaration was neither material nor intended to deceive. As to the materiality element,[5] plaintiff would have a colorable argument that even if the PTO knew that Richter had only "just looked at" the drawings without going into detail, the PTO would not have considered that information important in

---

[5] "Under the materiality prong, information is material when a reasonable examiner would 'likely consider [the information] important in deciding whether to allow an application to issue as a patent.'" Advanced Magnetic Closures, Inc. v. Rome Fastener Corp., 607 F.3d 817, 829 (Fed. Cir. 2010) (quoting McKesson Info. Solutions, Inc. v. Bridge Med., Inc., 487 F.3d 897, 913 (Fed. Cir. 2007)) (upholding district court's finding of inequitable conduct where applicant falsely claimed inventorship).

deciding whether to issue the patent.  As to the intent to deceive element, plaintiff could have reasonably argued that the difference between "just looked at" and "review[ed]" is not so great that misrepresenting the former as the latter evinces an intent to deceive the PTO.

Given all of the above, plaintiff did not engage in misconduct by contesting this inequitable conduct defense.  Cf. Beckman Instruments, 892 F.2d at 1551-52 (noting that it is "difficult" for a particular defense to be considered baseless when it survived a motion for summary judgment, but affirming district court's finding of exceptionality and award of fees because of party's collective "strategy of vexatious activity").

### iii.  Improper Attempt to Change Deposition Answers

Defendants argue that Herbert Richter's attempt to change his deposition answers via an errata sheet is further evidence of plaintiff's bad faith litigation.

Defendants cite to precedent outside the Second Circuit for the proposition that an errata sheet cannot be used to produce deposition answers that contradict the answers originally given at the deposition.  See Attic Tent, Inc. v. Copeland, No. 06-cv-0066, 2007 WL 174679 (W.D.N.C. Jan. 22, 2007) (granting motion to strike errata sheets because they directly contradicted deposition testimony). Furthermore, defendants argue that such contradictory changes are

evidence of plaintiff's litigation misconduct. However, such changes are permitted under Second Circuit precedent, which controls on procedural issues. Moreover, the context in which the changes were made, including Herbert Richter's other statements at the first day of the deposition and the circumstances of the deposition, suggest that the changes were simply made to clarify his confusing testimony.

In patent cases, "the law of the Federal Circuit governs questions of patent law, while the law of the regional circuit applies to procedural questions that are not specific to patent law." In re Rivastigmine Patent Litig., 246 F.R.D. 428, 430 (S.D.N.Y. 2007) (Francis, Mag. J.) (citing Madey v. Duke Univ., 307 F.3d 1351 (Fed. Cir. 2002)). In the Second Circuit, errata sheets may be used to change substantively, and even to contradict flatly, previous testimony. See Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 103 (2d Cir. 1997); see also Martal Cosmetics, Ltd. v. Int'l Beauty Exch., No. 01-cv-7595, 2007 WL 2126091, at *7 n.8 (E.D.N.Y. July 24, 2007) (Orenstein, Mag. J.) (noting that "[t]he court need not evaluate the reasons underlying the deponent's changes, even if the changes flatly contradict the deponent's original testimony"). A deponent's original answer, however, still remains part of the record. Podell, 112 F.3d at 103. Thus, the type of change plaintiff attempted to make via the errata sheet is permitted in this circuit.

Although permitted, using an errata sheet to flatly contradict earlier testimony could potentially still show bad faith in some instances, particularly if there is no reasonable explanation for the change. Herbert Richter's errata sheet, however, cannot be said to flatly contradict his initial testimony because, as explained supra, his initial testimony was itself unclear and somewhat contradictory. Moreover, the record reveals plausible explanations for the change on the errata sheet. The context in which the changes were made, including Richter's other statements at the first day of the deposition and the circumstances of the deposition, suggest that the changes were simply made to clarify Richter's confusing testimony. These are the same reasons why a fact-finder may have credited Richter's testimony from the second day of the deposition. See discussion supra.

Although the types of changes made by Herbert Richter were permissible, his errata sheet failed to identify the reasons why he made the changes. Federal Rule of Civil Procedure 30(e) specifically requires that the errata sheet include the reasons for the changes. "Numerous courts have rejected changes to depositions when the procedural requirements of Rule 30(e) were not met." Winston v. Marriott Int'l, Inc., No. 03-cv-6321, 2006 WL 1229111, at *5-6 (E.D.N.Y. May 8, 2006) (noting that under Second Circuit law errata sheets may substantively alter testimony, but excluding

20

disputed errata sheet as untimely); see also Kull v. Village of Yorkville, No. 07-cv-686, 2008 WL 5188167, at *4-5 (S.D. Ohio Dec. 10, 2008) (McCann King, Mag. J.) (excluding errata sheet that was untimely and that failed to include reasons for the changes). Although not raised by defendants' in their motion to strike, Herbert Richter's errata sheet could have ultimately been stricken for failing to comply with this procedural requirement of Rule 30(e). However, that fact is insufficient to show that the change in the errata sheet was sought in bad faith. Contrary to defendants' argument, the instant case is not comparable to Margo v. Weiss, 213 F.3d 55 (2d Cir. 2000), in which the Second Circuit upheld an award of attorney's fees under Rule 11 where, months after the plaintiffs' depositions and the filing of a motion to dismiss, the plaintiffs filed affidavits, supplemental interrogatory answers and untimely errata sheets that flatly contradicted earlier key admissions made by the plaintiffs in their depositions and original interrogatory answers.

**iv.  Improper Designation of Expert Witnesses**

Defendants argue that plaintiff improperly designated Dixon and Harald Richter as expert witnesses.  As such, defendants assert they were forced to go to the expense of preparing motions in limine to exclude the witnesses' testimony.  According to defendants' attorney's fees motion, Dixon and Harald Richter were not qualified

to testify as experts because they "clearly lacked the requisite ordinary skill in the art (of designing mount products) to properly determine whether Defendants' '250 patent was valid." Def.'s Mem. in Supp. of Motion for Attorneys Fees at 28. It should be noted that this is a different argument than the one defendants raised in the motions in limine, which contended that Dixon and Harald Richter should have been precluded from testifying about invalidity because, in their depositions, they failed to mention certain legal standards relevant to invalidity.

It is ultimately unnecessary to determine whether the witnesses, in fact, had the requisite ordinary skill in the art to testify as experts on invalidity. Rather, the question is whether Dixon and Harald Richter were so unqualified that plaintiff's labeling them as experts constituted litigation misconduct.

Harald Richter and Dixon were both part owners of the plaintiff corporation. Harald Richter Decl. ¶ 1; Dixon Decl. ¶ 1. Harald Richter is also CEO and Managing Director of HR Germany and his responsibilities involve "the creation and development of electronics accessory products," including mount products. Harald Richter Decl. ¶ 2, ¶ 4. Dixon has similar experience creating mount products. Dixon Decl. ¶ 4. Harald Richter was himself personally involved with the creation of the commercial embodiment of the design shown in the '250 patent. Harald Richter Decl. ¶ 3. Moreover, the

jobs held by Harald Richter and Dixon involved "designing mount products." Harald Richter Decl. ¶ 4; Dixon Decl. ¶ 5. Therefore, the witnesses' experience is not, as defendants claim, limited to visiting retail locations and observing mount purchasers, but includes some experience creating and designing mount products. Although the witnesses did not explain their experience "designing" mounts in great depth, the fact that both witnesses possessed several years of experience in this area establishes that they were not so unqualified in the pertinent art that plaintiff showed bad faith by labeling them as experts.

### v.   Opposition to Defendants' Request to Stay Discovery

Defendants argue that plaintiff prolonged litigation and increased costs by opposing defendants' attempt to stay discovery pending their anticipated motion for summary judgment. Specifically, defendants assert that their attempt to mitigate costs by staying discovery was denied by the court "in view of HR's strong objections."[6]  Mot. for Att'y's Fees at 9.  However, plaintiff's opposition to the discovery stay request was reasonable.  The only

---

[6]  Defendants erroneously interpret Judge Orenstein's denial of their stay motion to mean such a motion would never have been granted. However, Judge Orenstein explicitly stated that, if defendants asked for permission to file an early summary judgment motion, and permission was granted to file such a motion, then he would entertain a renewed motion to stay discovery.  Ultimately, defendants never sought permission to file an early summary judgment motion or renewed their motion to stay discovery.

issue that defendants were planning to raise in their early summary judgment motion was the invalidity challenge based on the inconsistent patent drawings, an argument that was ultimately rejected.

## b. Frivolity of the Case

Defendants contend that the infringement claim was frivolous and therefore the suit was brought in bad faith. "A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless." Haynes Int'l Inc. v. Jessop Steel Co., 8 F.3d 1573, 1579 (Fed. Cir. 1993), reh'g granted on other grounds, 15 F.3d 1076 (Fed. Cir. 1994). Frivolity of a suit is determined from the time the suit is brought and throughout the time it is maintained. Id. at 1580. "Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Brooks Furniture, 393 F.3d at 1381. If a "patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." Eltech Sys., 903 F.2d at 811 (affirming award of attorney's fees in utility patent case where plaintiff performed

inadequate tests to determine infringement, plaintiff withheld presumably unfavorable expert report and plaintiff failed to provide sufficient evidence of counsel's oral advice upon which plaintiff allegedly relied).

The Federal Circuit has noted that the "[d]efeat of a litigation position, even on summary judgment, does not warrant an automatic finding that the suit was objectively baseless; all of the circumstances must be considered." Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1315 (Fed. Cir. 2010) (affirming district court's denial of § 285 attorney's fees where accused infringer established defense of equitable estoppel on summary judgment). The Federal Circuit has also observed that design patent "[i]nfringement is often difficult to determine, and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith." Brooks Furniture, 393 F.3d at 1384 (reversing fee award in design patent infringement suit and finding no subjective bad faith where, even though infringement claim was decided on summary judgment, patentee relied on reasonable opinions of counsel and experts).

The finding of exceptionality in the instant case turns on whether the '250 design and the accused design are, on their face, so extremely dissimilar that plaintiff was "manifestly unreasonable" in assessing the merits of the infringement claim. The other

evidence that defendants proffer to show bad faith is either inadmissible or has minimal relevance.

Defendants contend that, beyond the designs themselves, there is additional evidence of bad faith, relying on Dixon's statement during settlement negotiations that "this case never should have been brought by HR, and that he had been opposed to the filing of this case against Defendants." Mizrahi Decl. ¶ 2. Plaintiff objects that this statement is inadmissible under Federal Rule of Civil Procedure 408.

Rule 408, entitled "Compromises and Offers to Compromise," provides:

> (a) Prohibited uses.--Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount . . . :
>
> > (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
>
> (b) Permitted uses.--This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include

> proving a witness's bias or prejudice; negating
> a contention of undue delay; and proving an
> effort to obstruct a criminal investigation or
> prosecution.

Thus, although offers to settle a claim and statements made during settlement negotiations regarding a claim are not admissible to establish "liability for, invalidity of, or amount of" that claim, evidence of settlement negotiations may, in a district court's discretion, be admitted if offered for "another purpose." Starter Corp. v. Converse Inc., 170 F.3d 286, 293-94 (2d Cir. 1999)(upholding admission of evidence to prove claims of contractual and equitable estoppel based on representations made during settlement negotiations).

Here, Dixon's statement and the accompanying settlement offers are inadmissible. Plaintiff's potential liability for attorney's fees was clearly one of the "claims" at issue during the August 2008 settlement negotiations. Plaintiff would not have offered to assign the '250 patent to defendants if plaintiff did not believe that it had some potential liability for attorney's fees. Moreover, both defendants' response to the initial offer and Dixon's subsequent offer explicitly addressed defendants' attorney's fees.

The two district court cases from this Circuit cited by defendants, EMI Catalogue Partnership v. CBS/Fox Co., No. 86-cv-1149, 1996 WL 280813 (S.D.N.Y. May 24, 1996), and Greenwich Film Productions, S.A. v. DRG Records, Inc., No. 91-cv-0546, 1996

WL 502336 (S.D.N.Y. Sept. 4, 1996), are distinguishable.[7]  Neither

of these cases appears to have involved settlement discussions where

liability for attorney's fees (and the amount of those fees) was

expressly at issue in the negotiations.

Defendants also rely on the fact that, at the beginning of the

litigation, defendants' attorney sent a letter to plaintiff's

counsel demanding that plaintiff withdraw the suit because there was

no infringement of the '250 patent.  In the letter, defendants'

counsel set forth defendants' non-infringement defense by detailing

five differences between the claimed and accused designs.[8]  The

response from plaintiff's counsel acknowledged those differences,

but also asserted that "we believe that the overall similarity as

_____

[7]  In EMI, the court, in determining whether to award discretionary
attorney's fees under the Copyright Act, considered settlement
discussions in concluding that the plaintiff's claim was not
objectively unreasonable.  In Greenwich Film, the court admitted an
early settlement offer that plaintiff rejected and relied on the
reasonableness of that offer to reduce an award of attorney's fees
under the Copyright Act.

[8]  Defendants repeated their withdrawal demand in two subsequent
letters on June 4 and 14, 2007, which only addressed defendant's
arguments that the '250 patent was invalid.  Defendants' fourth
letter, on August 9, 2007, repeated the withdrawal demand and
included expert reports, approximately six months in advance of the
due date, to support their position that the patent was invalid.  The
fourth letter also stated that, while defendants were going forward
with a summary judgment motion on invalidity, they would move also
for summary judgment on non-infringement "if necessary."  Mot. for
Att'y's Fees, Ex. F.

well as the multiple points of specific similarity override any of the differences that may exist between the claimed design and the Mizco mount." Mot. for Att'y's Fees, Ex. B. Although two of the differences asserted in defendants' withdrawal letter were relied on by the summary judgment decision in finding non-infringement,[9] Mot. for Att'y's Fees, Ex. A; HR US LLC, 2009 WL 890550, at *11, the withdrawal letter only shows that plaintiff was on notice of defendants' position and does not, in and of itself, establish that plaintiff's view of infringement was manifestly unreasonable.

Ultimately, plaintiff's infringement claim was not manifestly unreasonable. It is true that summary judgment was granted based on a visual comparison that revealed that the accused product and the claimed design were plainly dissimilar, rendering unnecessary any comparison with prior art. However, the Court finds the two designs are not so extremely dissimilar as to establish, by clear and convincing evidence, that plaintiff's pursuit of the infringement claim was manifestly unreasonable. In addition, defense counsel admitted at the initial conference that it was

_____

[9]  Both the letter and the summary judgment opinion cite the following two main differences between the claimed and the accused patent: (1) the accused design's side arms are set within the border of the base, whereas the claimed patent's side arms are not; and     (2) the accused design has notches cut into the side of the base whereas the claimed design has no such notches. Mot. for Att'y's Fees, Ex. A; HR US LLC, 2009 WL 890550, at *11.

possible that summary judgment would be denied on the issue of infringement. Hr'g Tr. 7-8, July 20, 2007 ("the court could always say . . . there may be some factual issue [on the question of infringement]"). Although not raised by plaintiff, that concession further supports a finding that the infringement claim was not manifestly unreasonable.

As such, defendants have failed to establish that this is an exceptional case. Moreover, even if this case were exceptional, the Court would, in its discretion, refuse to award fees given defense counsel's concession regarding the closeness of the infringement issue and plaintiff's acceptable conduct during the litigation.

**Conclusion**

Defendants' motion to have this case declared exceptional within the meaning of 35 U.S.C. § 285 is denied. The Clerk of the Court is directed to close the case.

Dated:     Brooklyn, New York
           September 28, 2010

                              SO ORDERED:

                              _____/s/_____
                              David G. Trager
                              United States District Judge